■ Harold S. Dowling, Appellant-Respondent, v Consolidated Carriers Corp. et al., Respondents-Appellants, and Queens Transit Corp. et al., Respondents. Queens Transit Corp. et al., Third-Party Plaintiffs, v Top Job Personnel, Inc., Third-Party Defendant. — Order, Supreme Court, New York County (Robert E. White, J.), entered August 1, 1983, which granted the motion of defendants-respondents for summary judgment dismissing the complaint, reversed, on the law, with costs, and the motion for summary judgment is denied. ¶ On July 14, 1980, the driver of a truck owned by J.H.T. Leasing Corp. and leased to Consolidated Carriers Corp. experienced recurrence of a mechanical problem with the truck in which the accelerator pedal occasionally sticks, does not elevate automatically when the driver's foot is off it, and which the driver is able to correct only by tapping the pedal with his foot. The driver called the mechanics responsible for the maintenance of the truck who instructed him to drive the truck back into Manhattan. ¶ At about 5:30 p.m. the truck was traveling westbound on the Long Island Expressway when the pedal stuck again as the truck was descending an incline. At that point the expressway curved slightly to the left. The driver looked at the pedal for a moment, during which period the truck swerved on to the shoulder of the expressway, striking two parked buses. The plaintiff, a passenger in the truck, suffered very severe injuries to his legs. ¶ This action for damages was brought against what might be called in general terms the "truck defendants" and the "bus defendants". Accepting for purposes of the motion that the presence of the buses on the shoulder of the Long Island Expressway violated section 1202 (subd [a], par 1, cl j) of the Vehicle and Traffic Law and subdivision d of section 80 of the Traffic Regulations of the City of New York and was therefore negligence, the bus defendants moved for summary judgment on the single ground that as a matter of law the negligence of the buses was not a proximate cause of the injuries sustained by the plaintiff. Finding dispositive the decision of the Court of Appeals in Sheehan v City of New York (40 NY2d 496, 499), Trial Term granted the motion to dismiss the action against the bus defendants. We disagree, and accordingly reverse and deny the motion for summary judgment dismissing the complaint. ¶ Section 1202 of the Vehicle and Traffic Law provides in pertinent part: ¶ "(a) Except when necessary to avoid conflict with other traffic, or when in compliance with law or the directions of a police officer or official traffic-control device, no person shall: ¶ "1. Stop, stand or park a vehicle * * * ¶ "j. On a state expressway highway or state interstate route highway, including the entrances thereto and exits therefrom, which are a part thereof, except in an emergency." ¶ Subdivision d of section 80 of the

Traffic Regulations provides: "Stopping or parking or operation of a motor vehicle is prohibited on the berm or shoulder adjacent to a parkway or an expressway as specified in § 79 of these regulations except for emergency purposes." ¶ Although section 1202 (subd [a], par 1, cl j) of the Vehicle and Traffic Law and subdivision d of section 80 of the Traffic Regulations appear to be addressed to the same problem, it becomes apparent on analysis that the Vehicle and Traffic Law section has a broader scope. As defined in the Vehicle and Traffic Law, the word "highway" includes both the roadway, the portion "ordinarily used for vehicular travel", and the shoulder. (Vehicle and Traffic Law, §§ 118, 140; see, also, *Darling v Village of Herkimer,* 11 Misc 2d 593.) That the word "highway" was used in section 1202 (subd [a], par 1, cl j) with the explicit intent that the prohibitions of that section were to apply equally to the shoulder as well as to the roadway is underlined by the circumstance that the immediately preceding clause in section 1202 refers only to the word "roadways". ¶ In short, section 1202 (subd [a], par 1, cl j) appears clearly to embody a legislative judgment that stopping, standing or parking a vehicle either on the roadways or shoulders of State express highways or State interstate route highways, highways designed for fast-moving vehicular traffic, presents, except in carefully specified circumstances, an unacceptable danger of accidents. It is difficult to see how an event of the kind intended to be avoided by this inclusive statutory prohibition can reasonably be considered an unforeseeable, intervening event. ¶ Trial Term's reliance on *Sheehan v City of New York (supra)* seems to us misplaced. The differences between the *Sheehan* situation and that presented here are far more substantial than the similarities. *Sheehan* involved an accident occurring on the streets of the city. As described in the Court of Appeals opinion, a bus had come to a slow and gradual stop at an intersection, the driver having signaled his intent to stop through his brake lights, which had been observed by a following truck 150 feet behind the bus. The truck brakes did not hold, causing a collision in which a bus passenger was injured. A factual issue was raised by the contention that the bus, in violation of a section of the New York City Traffic Regulations, had failed to bring the bus to the indicated bus stop for the purpose of picking up or discharging passengers, the bus driver claiming that the bus stop was occupied by other vehicles. The Court of Appeals observed (at pp 502-503) that if the bus driver had pulled into the bus stop and picked up or discharged passengers, it could properly have pulled back into the traveling lane in which the accident occurred before proceeding across the intersection, in which event "it would, properly, have been in exactly the same position at which it found itself when it was hit. Or, if observing no prospective passengers in the stop and having none who wished to alight at that corner, the bus driver had decided not to go through the proper practice of pulling in and out of the stop, but, preparatory to crossing, had merely stopped in the traveling lane at the corner before doing so, his bus would have been in precisely the same position. In short, the bus at the time of the accident appears merely to have been at one point in the street where it had a right to be (the traveling lane) rather than at another point in the street where it had a right to be (the bus stop). The result of the sanitation truck's brake failure would have been no different, if, perchance, a pedestrian or a vehicle other than the bus had been using the street at that point at that time and had instead become the target of the truck's faulty brakes." ¶ The situation here is fundamentally different. On the facts accepted in the motion papers of the bus defendants, the buses were stopped where they had no right to be, in direct violation of statute and regulation, and where vehicles would have a right to be only in unusual, carefully limited circumstances. ¶ As was observed by Presiding Justice Hopkins in what remains one of the ablest judicial discussions in this State of the issue: "The definition of proximate

cause has been elusive, probably because the public policy underlying the concept cannot be described other than in general terms." (*Pagan v Goldberger,* 51 AD2d 508, 509.) The threshold question, of course, is whether the negligence alleged in fact caused the claimed injuries. (See Prosser, Law of Torts [4th ed], § 41.) There can be no doubt here on the facts conceded for purposes of the motion that the negligence of the bus defendants was a substantial cause of the injuries sustained by the plaintiff. Applying the several guidelines identified by Presiding Justice Hopkins in *Pagan v Goldberger* (*supra,* p 511) as relevant tools of analysis, we see little room for doubt that a factual issue as to proximate cause is presented. ¶ The negligence of the bus defendants was closely, indeed immediately, connected in time and space to the injuries sustained by the plaintiff. The public policy is here embodied in both a statute and regulation which explicitly prohibit the conduct that we must assume to have been established for purposes of this motion. A legal relationship between the operators of the bus and other vehicular traffic, imposing a duty of care, is apparent in the circumstances, and implicit in both the statute and the regulation. Nor can there be perceived any basis for a finding that the event was not of a kind that was reasonably foreseeable. ¶ The statute and the regulation were clearly designed with an awareness, based on general experience, that from time to time vehicles on high-speed State highways go on to the shoulder under circumstances that make the presence of standing or parked vehicles a source of danger. It matters not whether the driver of the truck here intended to go on to the shoulder because of mechanical failure, or in an effort to avoid another vehicle, or whether the truck did so because a steering wheel misfunctioned or as a result of driving error. As the Court of Appeals observed in *Derdiarian v Felix Contr. Corp.* (51 NY2d 308, 315) with regard to intervening causes: "Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve." (See *Somersall v New York Tel. Co.,* 52 NY2d 157; *Sewar v Gagliardi Bros. Serv.,* 51 NY2d 752; *Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507; *Naeris v New York Tel. Co.,* 6 AD2d 196; Restatement, Torts 2d, § 446.) Concur — Sandler, Asch and Alexander, JJ.

Murphy, P. J. and Kassal, J., dissent in a memorandum by Kassal, J., as follows: We disagree with the majority that there is a triable issue as to the proximate cause of the accident under the admitted facts of this case. The occurrence resulted not from the position of the buses stopped on the shoulder of the expressway, but from the intervening or superseding negligence of the truck driver, who had taken his eyes off the road and lost control of the truck. In substance, we agree with the decision of Justice Robert E. White, who granted summary judgment dismissing the complaint against the owners and operators of the buses. ¶ For purposes of this motion, defendants have conceded that, at the time of the accident, the buses had no right to be located where they were, on the shoulder of the Long Island Expressway. The facts were undisputed and, although they are substantially as stated by the majority, a more precise description of the location and the circumstances of the accident is useful. ¶ Prior to the date of the accident the truck, owned by J.H.T. Leasing Corp. and leased to Consolidated Carriers Corp., had experienced mechanical problems associated with the accelerator pedal. The operator of the truck, defendant McKenzie, and other drivers had complained to mechanics that the gas pedal had been sticking. On July 14, 1980, the date of the accident, McKenzie experienced the same problem and, on instructions from mechanics, was returning to the garage in Manhattan via the Long Island Expressway, traveling westbound, in the right-hand lane, at 40 to 50 miles per hour. After proceeding uphill with the accelerator fully depressed, McKenzie removed his

foot at the crest of the hill for the downhill trip and noticed that the truck began to pick up speed. He tapped the gas pedal in an attempt to release it and, when that did not work, took his eyes from the road to look at the floor in order to free the accelerator pedal. The truck went out of control, McKenzie failing to notice that the roadway curved to the left and, as a result, it left the traveled portion of the expressway and crashed into two buses which were parked on the shoulder, off the roadway. Until the moment of impact, McKenzie never saw the buses nor did he attempt to apply the brake, disengage the ignition or place the truck into neutral gear. The truck ricocheted off the buses and came to rest about a quarter of a mile away near a wall at the bottom of the hill. ¶ At the time of the impact, the two buses were parked in a shoulder area, marked by slanted, white-painted lines, alongside, but fully off, the three westbound lanes of the expressway. This marked shoulder area was not a traveling lane since it ended less than 1,000 feet away, in a triangular shape. On the far side of the motionless buses was a grassy area and then a concrete bridge support area, which separated the three westbound lanes from the merging entrance ramp of the Brooklyn-Queens Expressway. ¶ Plaintiff, a passenger in the truck, was severely injured by the impact. The suit was brought against the owners of the truck, the owners of both buses and the operators of each; the action against the owner and operator of the truck having been settled. Trial Term granted summary judgment dismissing the complaint against the bus defendants, finding that the position of the buses off the roadway was but a condition for the occurrence of the accident and that the proximate cause was the intervening or superseding negligence of the truck driver, who lost control of the truck, taking his eyes from the roadway. ¶ We agree with that determination and, accordingly, would affirm the order. Taking into account that the facts relating to the occurrence of the accident are undisputed and that the negligence of the bus defendants is conceded, whether their negligence was a proximate cause of the accident is a question of law for the court, not for the jury (*Colban v Petterson Lighterage & Towing Corp.*, 19 NY2d 794, 796; *Rivera v City of New York*, 11 NY2d 856, 857; *Gralton v Oliver*, 277 App Div 449, 454, affd 302 NY 864). Liability in any negligence case is to be resolved by application of a two-pronged standard, namely, negligence and proximate cause. Here, the negligence of the bus defendants is based upon the violation of section 1202 (subd [a], par 1, cl j) of the Vehicle and Traffic Law and subdivision d of section 80 of the Traffic Regulations of the City of New York. Nevertheless, we agree with Trial Term that the negligent act only furnished a condition for the occurrence of the accident but was not the proximate producing cause (*Sheehan v City of New York*, 40 NY2d 496, 503; *Darling v State of New York*, 16 NY2d 907; *Rivera v City of New York, supra*). ¶ The observation in *Gralton v Oliver* (277 App Div, at pp 452-453) is instructive: "Under the undisputed evidence the first accident was a *causa sine qua non* but not a *causa causans* of plaintiff's injuries. (*Trapp* v. *McClellan*, 68 App. Div. 362, 367.) In such a case it has long and repeatedly been held that the author of the remote cause is not liable for the injury. The rule is thus stated in Corpus Juris (Vol. 45, Negligence, § 491), viz: 'A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion.' " ¶ In *Sheehan v City of New York* (*supra*, p 503), an illegally stopped Manhattan and Bronx Surface Transit Operating Authority bus was rear-ended by an "out of control truck", while the bus was on the traveled portion of the roadway, the court holding, "as a matter of law, that the conceded negligence of the

sanitation truck was the sole proximate cause of the injuries and that the continued presence of the bus in the traveling lane at the time it was struck merely furnished the condition or occasion for the occurrence of the event rather than one of its causes". To the extent that negligence could be ascribed to the position of the bus in a moving lane, it was held (p 503) that "the failure of the truck's brakes might have been an independent, supervening cause." The observation by Judge Fuchsberg, writing for the unanimous court in *Sheehan* (*supra,* pp 503-504) is instructive: "Though, where either of two independent acts of negligence may be found to be concurring, that, is direct causes of an accident, the perpetrator of either or both may be found responsible for the whole harm incurred (*Dunham v Village of Canisteo,* 303 NY 498, 504; *Slater v Mersereau,* 64 NY 138; see, also, Prosser, Joint Torts and Several Liability, 25 Cal L Rev 413, 435-439; 1 Harper and James, Torts, §§ 10.1-10.2), when such an intervening cause 'interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated,' it will prevent a recovery on account of the act or omission of the original wrongdoer (1 Warren's New York Negligence, § 5.08, p 122; see, also, *Leeds v New York Tel. Co.,* 178 NY 118, 121-122; cf. *McLaughlin v Mine Safety Appliances Co.,* 11 NY2d 62)." ¶ Applying the principle of *Sheehan* to our case, the intervening or superseding cause was the action of the truck driver in failing to maintain control of the truck after encountering a mechanical problem with the accelerator pedal, not the position of the buses, albeit illegally parked off the traveled portion of the roadway. *Nieves v City of New York* (63 AD2d 1000) is analogous to the situation here. In *Nieves,* a tractor trailer had been illegally parked, fully off the roadway, when an automobile in which plaintiff was a passenger went out of control and struck the rear of the tractor trailer. The Appellate Division, Second Department, held, as a matter of law, that the negligence of the tractor trailer "was in no way proximately related to the cause of the accident" and, accordingly, affirmed the order granting summary judgment dismissing the complaint. ¶ The majority's reliance upon *Derdiarian v Felix Contr. Corp.* (51 NY2d 308) is misplaced. *Derdiarian* involved an injured workman who, while in a ditch at an excavation site, was burned when the driver of a vehicle who had failed to take medication suffered an epileptic seizure and crashed through a construction barricade, propelling a pot of boiling enamel into the air, splattering the plaintiff. At issue there was whether it had been established that the contractor's inadequate safety precautions at the worksite were the proximate cause of the accident. The court held that the negligence of the vehicle was not a superseding cause as a matter of law and that the contractor had failed to properly safeguard the excavation site. However, in *Derdiarian,* the contractor failed to protect the worker from the very risks which the construction barrier was intended to eliminate and, accordingly, it was concluded that the accident was foreseeable. "An intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent." (51 NY2d, at p 316.) Thus, on its facts, *Derdiarian* is distinguishable from the situation in our case. ¶ The critical consideration controlling here, and which was the predominant factor in Sheehan, is that the position of the buses, regardless of whether they were in an emergency situation, furnished a condition or circumstance for the occurrence of the accident and was not causally connected in terms of proximate cause. There is nothing in the record, nor do appellants contend, that the shoulder portion of the expressway was intended to arrest any vehicles which went out of control. In addition, it appears that, at the rate of speed the truck was admittedly traveling, it could not have stopped when it

left the roadway and before reaching the concrete bridge support area, beyond the striped shoulder and grassy area alongside the westbound lanes. ¶ Taking into account all the facts, including the actions of the buses in stopping where they did, it was not reasonably foreseeable that in clear, dry weather, a vehicle, totally out of control due to the negligence of its driver in not maintaining a proper lookout, would veer from the highway and strike other vehicles parked fully off the roadway. While stopping alongside the road may have been a statutory violation, under the circumstances of this case, the negligence of the buses was a remote and not a proximate, immediate or efficient cause of the accident. Judge Andrews observed in his dissent in *Palsgraf v Long Is. R. R. Co.* (248 NY 339, 352): "What we do mean by the word 'proximate' is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point." ¶ While, as the majority notes, foreseeability and proximate cause usually pose issues for the trier of the facts, the conceded facts in this case clearly show no causal connection between the position of the buses and the occurrence of the accident. Their presence furnished a condition or occasion for the occurrence of the accident but was not a proximate cause of the injuries. To the extent any causal connection did exist, there was an intervening or superseding cause — the condition of the accelerator pedal and the negligence on the part of the truck driver in failing to maintain proper control and lookout under the prevailing circumstances. ¶ Accordingly, the order, Supreme Court, New York County (Robert E. White, J.), entered August 1, 1983, granting the motion by defendants-respondents for summary judgment dismissing the complaint, should be affirmed.